UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | Case No: |
| | : | |
| | : | VIOLATIONS: |
| | : | |
| | : | 18 U.S.C. §2339A(Conspiracy to Provide |
| | : | Material Support to Terrorists) |
| | : | |
| v. | : | 18 U.S.C. § 2339A (Providing Material |
| | : | Support to Terrorists) |
| | : | |
| | : | 18 U.S.C. § 956 (Conspiracy to Kill/Injure |
| | : | Persons Abroad) |
| | : | |
| | : | 18 U.S.C. § 371 (Conspiracy) |
| | : | |
| SYED TALHA AHSAN | : | 18 U.S.C. § 2 (Aiding and Abetting) |

**I N D I C T M E N T**

The Grand jury charges that:

**INTRODUCTION**

1.  From in or about 1997, the exact date being unknown to the grand jury, and continuing through at least August, 2004, BABAR AHMAD ("AHMAD"), a resident of the United Kingdom, and AZZAM PUBLICATIONS, who are named but not charged herein, along with the defendant SYED TALHA AHSAN ("AHSAN"), and others known and unknown to the grand jury, provided, and conspired to provide, material support and resources to persons engaged in acts of terrorism in Afghanistan, Chechnya and elsewhere.  Specifically, AHMAD, AZZAM PUBLICATIONS, AHSAN and others known and unknown to the grand jury, through the creation and use of various internet websites, e-mail communications, and other means, provided: expert advice and assistance; communications equipment; military items; currency;

monetary instruments; financial services; and personnel, all designed to recruit for and assist the Taliban and the Chechen Mujahideen, and to raise funds for terrorist activities in Afghanistan, Chechnya and other places.

The Taliban

2.     As used in this Indictment, "the Taliban," is the political/military entity formerly headquartered in Kandahar, Afghanistan that exercised de facto control over the territory of Afghanistan until its defeat in late 2001 and early 2002 by a multi-national coalition that included the United States.

3.     At all relevant times in this Indictment, Al-Qaeda was an international terrorist organization founded by Usama bin Laden and others and dedicated to opposing governments not established under strict Islamic law.  Bin Laden, as leader of Al-Qaeda, declared a jihad, or holy war, against the United States and its citizens, which he carried out through Al-Qaeda and its affiliated organizations.  Beginning in or about 1996, Usama bin Laden and others operated Al-Qaeda from their headquarters in Afghanistan, and forged close relations with the Taliban in Afghanistan.  On October 8, 1999, Al-Qaeda was designated by the Secretary of State as a foreign terrorist organization pursuant to Section 219 of the Immigration and Nationality Act, and was redesignated as such on or about October 5, 2001, and again in 2003, and remains so designated to date.

4.     On July 4, 1999, President of the United States William Jefferson Clinton declared a national emergency to deal with the threat posed by Al-Qaeda and the Taliban. Specifically, in Executive Order 13129, the President found that:

> [T]he actions and policies of the Taliban in Afghanistan, in allowing territory under its control in Afghanistan to be used as a safe haven and base of operations for

Usama bin Ladin and the Al-Qaeda organization who have committed and threaten to continue to commit acts of violence against the United States and its nationals, constitute an unusual and extraordinary threat to the national security and foreign policy of the United States.

As part of that Executive Order, the President prohibited, among other things, United States persons from making or receiving any contribution of funds, goods, or services to or for the benefit of the Taliban.  The Order also blocked all property and interests in property of the Taliban and prohibited trade-related transactions by United States persons involving the territory of Afghanistan controlled by the Taliban.  As used in this Indictment, the term "blocked" means that transactions or dealings in property in which the blocked entity or person has an interest are prohibited.  The Order further prohibited United States persons from engaging in transactions for the Taliban's benefit and prohibited any person from engaging in such transactions from the United States, including sending money and military material to the Taliban.

5.  On June 30, 2000, President Clinton continued the national emergency with respect to the Taliban.  One year later, the national emergency was again continued, pursuant to a finding by President of the United States George W. Bush that "[t]he Taliban continues to allow territory under its control in Afghanistan to be used as a safe haven and base of operations for Usama bin Laden and the Al-Qaeda organization who have committed and threaten to continue to commit acts of violence against the United States and its nationals."

6.  As used by some fundamentalist Muslim groups, the term "jihad" is an Arabic term meaning "holy war" and  refers to the use of violence, including paramilitary action, against persons or governments that are perceived to be enemies by its proponents.  Proponents of this view of jihad espouse a  fundamentalist version of Islam that advocates the use of military action and violence against governments, including the United States of America, and the citizens of

these governments that they perceive as threats.  The armed conflicts in the geographic areas of

Bosnia, Chechnyna, Afghanistan and elsewhere have involved murder, maiming, kidnaping, and

the destruction of property.  At all times material to this Indictment, the Taliban has been a group

of individuals that espoused and practiced this radicalized, violent form of jihad.   As used in this

Indictment, the term "mujahid," and its plural "mujahideen," are Arabic words referring to "those

who struggle" or "holy warriors," and refer to individuals who engage in this type of violence.

Chechen Mujahideen

7.  Ibn Khattab, at all times material to this Indictment until his death in March 2002, was

a leader of the Chechen Mujahideen, a group of mujahideen that has employed violence and

military action to kill, injure and maim people and to damage and destroy property in an effort to

promote the political goals of its members, which include establishing the independence of

Chechnya from Russia.

8.  At all times material to this Indictment, Ibn Khattab, until his death in March 2002,

and Shamil Basayev were leaders of the Chechen Mujahideen. Basayev was also a leader of what

is known as the Riyadus-Salikhin Reconnaissance and Sabotage Battalion of Chechen Martyrs

(RSRSBCM), a group of mujahideen that has employed violence and military action to kill,

injure and maim people and to damage and destroy property in an effort to promote the political

goals of its members, which include establishing the independence of Chechnya from Russia.

9. On February 28, 2003, pursuant to Section 1(b) of Executive Order 13224, issued

under the IEEPA, 50 U.S.C. §1701, et seq., the United States Department of State designated the

RSRSBCM as a "blocked entity" determined to have committed, or to pose a significant risk of

committing, acts of terrorism that threaten the security of United States nationals or the national

-4-

security, foreign policy, or economy of the United States.  On August 8, 2003, pursuant to

Section 1(b) of Executive Order 13224, issued under the IEEPA, 50 U.S.C. §1701, et seq., the

United States Department of State designated Shamil Basayev as a "blocked foreign person"

determined to have committed, or to possess a significant risk of committing, acts of terror that

threaten the security of United States nationals or the national security, foreign policy, or

economy of the United States.  As a result, the property and interests in the property of the

RSRSBCM and Basayev have been blocked and any transaction or dealing by United States

persons or within the United States in such property or interests has been blocked, including

providing funds, goods, or services to or for the benefit of the RSRSBCM and Basayev.

The Defendant and his Co-Conspirators

　　　　10.  At all times material to the Indictment, BABAR AHMAD, a/k/a BABAR AHMED

a/k/a "Mr. B", a/k/a "mrbee42", who is named but not charged herein, was a resident of the

United Kingdom living in London, England, who operated and directed the operation of AZZAM

PUBLICATIONS and its family of websites which existed throughout the world, including

azzam.com, azzam.co.uk, qoqaz.net, qoqaz.co.uk, webstorage.com/~azzam, and waaqiah.com.

　　　　11.  At all times material to this Indictment, AZZAM PUBLICATIONS, which is named

but not charged herein, was an entity based in the United Kingdom that was established and

operated to recruit individuals to become mujahideen and to solicit and raise funds and assistance

for jihad, including for the Taliban and Chechen mujahideen identified above.

　　　　12.  At all times material to the Indictment, the defendant, SYED TALHA AHSAN was a

resident of the United Kingdom living in London, England, who participated in the operation of

AZZAM PUBLICATIONS and its family of websites which existed throughout the world,

including azzam.com, azzam.co.uk, qoqaz.net, qoqaz.co.uk, webstorage.com/~azzam, and waaqiah.com.

<u>The Websites</u>

13.  AHMAD, AHSAN and others helped create, operate and maintain, and caused to create, operate and maintain, the websites referred to in paragraphs 10 and 12 in the following locations:  Connecticut, Nevada, the United Kingdom, Ireland, Malaysia and elsewhere.  These websites, and other forms of internet communications, posted and transmitted materials which were designed and intended to:  recruit mujahideen, raise funds for violent jihad, recruit personnel for the Chechen Mujahideen, the Taliban and associated groups, and give instructions for travel to Pakistan and Afghanistan to fight with these groups, provide instructions for the surreptitious transfer of funds to the Taliban, and solicit military items for these groups, including gas masks and night vision goggles.

14.  The websites and other internet media AHMAD, AHSAN and others helped create, operate and maintain through their expert advice and assistance were used to support and justify violent jihad.  Their expert advice and assistance were directly and integrally linked to ongoing efforts to provide personnel, currency, military items, monetary instruments, and other material support and resources for acts of terrorism, as well as to conceal and disguise the nature, location, source and ownership of such material support and resources.

15.  AHMAD, AHSAN and others established, maintained and used various e-mail accounts associated with the websites to administer the websites, hide their identities, communicate with other individuals also involved in the operation and administration of the websites, communicate with members of the Taliban, Chechen Mujahideen, and associated

groups, communicate with members of the public who sought to support violent jihad activities depicted on the websites, communicate with those who responded to the internet solicitations for material support and individuals who wished join these groups, solicit donations to support violent jihad and coordinate the transfer of money, and communicate with and provide to those who sought to purchase items advertised on the websites.  These items included videotapes depicting and promoting violent jihad in Chechnya, Bosnia, Afghanistan, and other lands of jihad, and the torture and killing of captured Russian troops.

16.  Members of the conspiracy also utilized certain e-mail accounts associated with the websites to communicate with a U.S. Naval enlistee on the U.S. Navy destroyer the *U.S.S. Benfold* which was operating within a U.S. Naval battle group in the Straits of Hormuz in the summer of 2001.  Through these e-mail accounts, members of the conspiracy communicated with the enlistee, who was sympathetic to the causes espoused on the Azzam family of websites, and referred to the October 2000 terrorist attack of the *U.S.S. Cole* as a "martyrdom operation."

17.  AHMAD, AHSAN and other members of the conspiracy further conspired to provide support to terrorists seeking temporary residence in London, England, and to assist those seeking to travel to Afghanistan and Chechnya to participate in jihad.

## COUNT ONE (Conspiracy to Provide Material Support to Terrorists)

18.  The allegations of paragraphs 1 through 17 are re-alleged as if fully set forth herein.

19.  From in or about 1997 through at least August 2004, in the District of Connecticut and elsewhere, BABAR AHMAD a/k/a Babar Ahmed, and AZZAM PUBLICATIONS, who are named but not charged herein, together with the defendant, SYED TALHA AHSAN, and others, known and unknown to the grand jury, did conspire, confederate and agree with others known

and unknown to the grand jury, to provide material support and resources, and to conceal and disguise the nature, location, source and ownership of such material support and resources, knowing and intending they were to be used in preparation for and in carrying out:

      (a)    a violation of Title 18, United States Code, Section 956 (conspiracy to kill, kidnap, maim, or injure persons or damage property in a foreign country); and

      (b)    a violation of Title 18, United States Code, Section 2332(b) (murder of U.S. nationals abroad),

and in preparation for, and in carrying out, the concealment of an escape from the commission of such violations, in violation of Title 18, United States Code, Sections 2339A and 371.

20.     From in or about 1997 to in or about October 26, 2001, BABAR AHMAD a/k/a Babar Ahmed, and AZZAM PUBLICATIONS, who are named but not charged herein, together with the defendant, SYED TALHA AHSAN, and others provided material support and resources in the form of currency, financial services, communications equipment, personnel, lodging, training, safehouses, false documentation and identification, facilities, transportation and other physical assets, including military items.

21.  From October 26, 2001, through at least August 2004, BABAR AHMAD a/k/a Babar Ahmed, and AZZAM PUBLICATIONS, who are named but not charged herein, together with the defendant, SYED TALHA AHSAN, and others provided material support and resources in the form of currency, monetary instruments, financial services, expert advice and assistance, communications equipment, personnel, lodging, training, safehouses, false documentation and identification, facilities, transportation and other physical assets, including military items.

<u>Overt Acts</u>

22.  The following overt acts, among others, were committed in furtherance of the conspiracy and to accomplish its goals and objects:

A.  From in or about 1998 through at least 2002, BABAR AHMAD a/k/a Babar Ahmed, who is named but not charged herein, and others, opened and maintained accounts at a number of Internet Service Providers ("ISPs") and web hosting companies in the United States, including OLM LLC, which at the time was headquartered in Connecticut, through which accounts they recruited individuals to participate in violent jihad and solicited and coordinated donations of funds, equipment and other assistance for violent jihad and mujahideen in Afghanistan and Chechnya.

B.  From in or about 1998 through at least 2002, BABAR AHMAD a/k/a Babar Ahmed, who is named but not charged herein, the defendant, SYED TALHA AHSAN, and others, caused the production and distribution of videotapes and compact discs depicting fighters in Bosnia, Chechnya and elsewhere, and eulogizing dead fighters, for the purpose of recruiting individuals and soliciting donations to support the mujahideen in Afghanistan and Chechnya.

C.  In or about 1998, BABAR AHMAD a/k/a Babar Ahmed, who is named but not charged herein, purchased 100 camouflage suits from a Long Island, New York company.

D. On or about July 30, 1998, BABAR AHMAD a/k/a Babar Ahmed, who is named but not charged herein, returned to England from the United States in possession of, among other items, Global Positioning Satellite ("GPS") equipment and a ballistic vest.

E.  On or about November 14, 2000, members of the conspiracy assisted in coordinating the shipment of gas masks to the Taliban.

F.  In or about August, 2001, members of the conspiracy sought to vet with leaders of the Chechen mujahideen, including Commander Shamil Basayev, an individual who claimed to have traveled to the United States to raise money and obtain handwarmers for Chechen mujahideen.

G.  In or about November, 2001, members of the conspiracy attempted to recruit Pakistani nationals to travel to Afghanistan to fight with the Taliban against the United States and instructed Pakistani nationals as to how to submit false and fraudulent visa applications for travel to Pakistan.

H.  In or about April, 2001, the defendant SYED TALHA AHSAN possessed, accessed, modified and re-saved a document containing then-classified United States Navy plans of a United States Naval Battle Group operating in the Straits of Hormuz and discussing the Naval Group's vulnerabilities to terrorist attack.

I.  In or about July, 2001, a member of the conspiracy, through e-mail accounts associated with Azzam Publications, communicated with a U.S. Naval enlistee who was sympathetic to the views expressed on the Azzam family of websites and referred to the October 2000 attack on the U.S.S. Cole as a "martyrdom operation."  The e-mail encouraged the enlistee to "keep up the psychological warefare [sic]."

J.  In or about December, 2003, BABAR AHMAD a/k/a Babar Ahmed, who is named but not charged herein, possessed the document containing the then-classified United

States Navy plans of a United States Naval Battle Group operating in the Straits of Hormuz and

discussing the Naval Group's vulnerabilities to terrorist attack.

   K.  On or about August 3, 2004, Ahmad possessed various materials, including

literature supporting violent jihad throughout the world, "Mantrapping" manuals which discussed

guerilla warfare techniques, methods to de-mobilize military vehicles, methods to conduct a

violent attack on a commuter rail platform, and low-tech tactics to bring down military aircraft.

  All in violation of Title 18, United States Code, Sections 2339A and 371.

## COUNT TWO (Providing Material Support to Terrorists)

  23.  The allegations contained in paragraphs One through Twenty-Two of the Indictment

are re-alleged as if fully set forth herein.

  24.  Beginning in or about 1999 and continuing through at least August 2004, the exact

dates being unknown to the grand jury, in the District of Connecticut and elsewhere, SYED

TALHA AHSAN, the defendant herein, provided material support and resources, and concealed

and disguised the nature, location, source and ownership of such material support and resources,

knowing and intending they were to be used in preparation for and in carrying out:

    (a)  a violation of Title 18, United States Code, Section 956 (conspiracy to kill, kidnap, maim, or injure persons or damage property in a foreign country); and

    (b)  a violation of Title 18, United States Code, Section 2332(b) (murder of U.S. nationals abroad),

and in preparation for, and in carrying out, the concealment of escape from the commission of

such violations, in violation of Title 18, United States Code, Section 2339A.

25.      From in or about 1999 to on or about October 26, 2001, the defendant, SYED

TALHA AHSAN, and others, aided and abetted by each other, provided material support and

resources in the form of currency, financial services, communications equipment, personnel,

lodging, training, safehouses, false documentation and identification, facilities, transportation and

other physical assets, including military items.

26.      From October 26, 2001, through at least August 2004, the defendant, SYED

TALHA AHSAN, and others, aided and abetted by each other, provided material support and

resources in the form of currency, monetary instruments, financial services, expert advice and

assistance, communications equipment, personnel, lodging, training, safehouses, false

documentation and identification, facilities, transportation and other physical assets, including

military items.

27.  The material support and resources provided by the defendant, SYED TALHA

AHSAN, included the following:

A.  From in or about 1999 through at least 2002, the defendant, SYED TALHA AHSAN,

and others, aided and abetted by each other, participated in the production and distribution of

videotapes and compact discs depicting fighters in Bosnia, Chechnya and elsewhere, and

eulogizing dead fighters, for the purpose of recruiting individuals and soliciting donations to

support the mujahideen in Afghanistan and Chechnya.

B.  In or about April, 2001, the defendant, SYED TALHA AHSAN, possessed, accessed,

modified and re-saved a document containing then-classified United States Navy plans of a

United States Naval Battle Group operating in the Straits of Hormuz and discussing the Naval

Group's vulnerabilities to terrorist attack.

All in violation of Title 18, United States Code, Sections 2339A and 2.

**COUNT THREE (Conspiracy to Kill, Kidnap, Maim Or Injure Persons or Damage Property in a Foreign Country)**

28.  Paragraphs One through Twenty-Seven of the Indictment are re-alleged as if fully set forth herein.

29.  From in or about 1997 through at least August 2004, the exact dates being unknown to the grand jury, in the District of Connecticut and elsewhere, BABAR AHMAD a/k/a Babar Ahmed, and AZZAM PUBLICATIONS, who are named but not charged herein, together with the defendant, SYED TALHA AHSAN, and others known and unknown to the grand jury, knowingly, willfully and unlawfully did combine, conspire, confederate and agree to murder, kidnap and maim persons and damage property in locations outside of the United States.

30.  In furtherance of the conspiracy and to effect the objects thereof, BABAR AHMAD a/k/a Babar Ahmed, and AZZAM PUBLICATIONS, who are named but not charged herein, together with the defendant, SYED TALHA AHSAN, and others known and unknown to the grand jury, committed the Overt Acts set forth in Paragraph Twenty-Two, the allegations of which are fully incorporated by reference herein.

All in violation of Title 18, United States Code, Section 956.

A TRUE BILL

_____
GRAND JURY FOREPERSON

_____
KEVIN J. O'CONNOR
UNITED STATES ATTORNEY

_____      _____
JOHN A. DANAHER, III                          STEPHEN B. REYNOLDS
ASSISTANT U.S. ATTORNEY                        ASSISTANT U.S. ATTORNEY